IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NICOLE C. TOMAZIC, ADMINISTRATIX ) ) ) Plaintiff, ) ) v. ) ) CITY OF CLEVELAND, et al., ) ) ) Defendants. ) ) | Case Number: 1:04 CV 2252 JUDGE DONALD C. NUGENT MEMORANDUM OPINION AND ORDER |

This matter is before the Court on Defendant Daniel Jopek's Motion for Summary Judgment. (ECF # 38). Plaintiff's decedent, Stanley Strnad, was killed after he fled from police following a traffic stop. Mr. Strnad died of gunshot wounds inflicted by Officer Jopek of the City of Cleveland Police Department. Plaintiff brought suit against Officer Jopek, the City of Cleveland, and various city officials, claiming that Officer Jopek, acting under color of law, violated Mr. Strnad's Fourth, Fifth and Sixth, and Eighth Amendment rights by exerting excessive and deadly force. Plaintiff has also asserted causes of action under the Civil Rights Act 1871, 42 U.S.C. § 1983, 28 U.S.C. §1343, and the Ohio common law. For the reasons set forth below, the Defendants' motion is hereby DENIED.

# FACTS[1]

It is undisputed that on the evening of November 14, 2003, Defendant Daniel Jopek shot and killed Stanley Strnad while Mr. Strnad was fleeing from the police. Officer Jopek and his partner Officer Rudin pulled Mr. Strnad over on a traffic stop. The exact reason for the stop is disputed. Once Mr. Strnad was stopped, Officer Jopek approached the car with his weapon drawn yelling to Mr. Strnad to turn off the car, put his hands up and to make no sudden moves. Rather than submit to the police, Mr. Strnad put the car in drive and drove away. There is further dispute as to whether in the process of driving away, Mr. Strnad actually assaulted the Officers by fishtailing and nearly hitting them as he escaped.

Officers Jopek and Rudin pursued Mr. Strnad until he left their jurisdiction. Mr. Strnad continued to flee police driving into the City of Euclid. By this time a police helicopter was also tracking Mr. Strnad's vehicle. When Mr. Strnad left Cleveland, Officers Jopek and Rudin were instructed to cease their pursuit. Eventually Mr. Strnad crossed back into the City of Cleveland's jurisdiction. At that time Officers Jopek and Rudin were told not to continue their pursuit by Cleveland Police Captain DiPiero because of safety concerns; the officers disregarded this command and resumed their pursuit of Mr. Strand's vehicle.

After Mr. Strnad re-entered the City of Cleveland, and while being pursued by Officers Jopek and Rudin, Mr. Strnad crashed into another car at an intersection. Having disabled his vehicle in the crash, Mr. Strnad then fled on foot. The helicopter continued to track Mr. Strnad

---

[1] Except as otherwise noted, the factual summary is based solely upon the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint, and the deposition transcripts filed with the Court as part of the summary judgment motion briefing. Those facts which are contested and have some support through deposition testimony, affidavit, or other evidence will be addressed in the "Discussion" section below and shall be construed in the light most favorable to the Plaintiff as required under the Summary Judgment standards.

2

illuminating him with the helicopter spotlight as he fled. Mr. Strnad ran down a driveway and into the backyard of a house on 156th Street. At some point between fleeing down the driveway, and being found near a swing set in the backyard, Mr. Strnad was shot four times by Officer Jopek. The details of what happened between the time Mr. Strnad ran down the driveway and the moment he was shot are in dispute.

Defendant Jopek claims that upon entering the driveway Mr. Strnad slowed his pace, removed his jacket and looked back at Officer Jopek while fumbling with his right hand in his waistband. (Jopek Dep. 110-111, 113-115, 118). Officer Jopek could not confirm at that time whether Mr. Strnad had any weapon. (Jopek Dep. 120). Officer Jopek says he repeatedly yelled to Mr. Strnad ordering him to stop and show his hands but that Mr. Strnad never complied with that command. (Jopek Dep. 116, 129, 134). According to Officer Jopek, Mr. Strnad ran between two parked cars and tried to climb a fence. (Jopek Dep. 132, 139). Unable to climb the fence, Mr. Strnad crouched down behind the car and then got right back up. (Jopek Dep. 139). Officer Jopek said Mr. Strnad turned toward him and again put his hand in his waistband "like he was grabbing something in his waistband." (Jopek Dep. 141). Mr. Strnad then headed for the backyard. (Jopek Dep. 143-144).

Officer Jopek says he followed Mr. Strnad around the cars and twice hit his knee on the corner of a parked vehicle causing himself intense pain. (Jopek Dep. 143-146; 153-154). The Officer then said that his knee gave out and he began to fall or stagger. (Jopek Dep. 154-155). At this moment, Officer Jopek says that Mr. Strnad turned back to face him, reaching toward him with his left hand, and reaching into his waistband with his right hand. (Jopek Dep. 157-158). Officer Jopek says that Mr. Strnad started to charge toward him as Officer Jopek started to fall,

and Strnad stated in a threatening manner "I've got you now, mother f-----." (Jopek Dep. 158). Officer Jopek stated that he felt in fear for his life, and as he fell, he fired his weapon at Mr. Strnad and continued firing until Mr. Strnad fell to the ground. (Jopek Dep. 160-162, 164, 168-169). Officer Jopek says that he fired at Mr. Strnad's front as Mr. Strnad was runnning at him. (Jopek Dep. 163).

Plaintiff, on the other hand, claims that Mr. Strnad ran continuously from the time he crashed his car until he crouched behind a parked car in the driveway, and that he never stopped to take off his jacket and never reached toward his waistband as he was heading down the driveway. (Farnsworth Dep. 35-37; Key Declaration). According to Plaintiff, Officer Jopek entered the driveway walking between parked cars and when Mr. Strnad jumped up from behind the parked car where he was hiding Officer Jopek immediately fired several successive shots. (Farnsworth Dep. 40-43). Based on a bullet hole found in the trunk of one of the parked cars, Plaintiff further contends that Officer Jopek may have fired the first shot at Mr. Strnad while he was still crouched behind the car, and that the four shots that hit him were fired as he raised up and ran away from the Officer.

Plaintiff also contends that as Officer Jopek continued to fire, Mr. Strnad was running away from the officer and ended up in the backyard. (Farnsworth Dep. 83). Plaintiff claims that Mr. Strnad was found in the backyard, lying half way under a swing set, face down with his head toward the back of the yard and away from Officer Jopek. (Keys Declaration). According to the Chief Deputy Coroner, four bullets entered Mr. Strnad from the back and traveled toward his front. (Felo Dep. 14-20). The Coroner testified at his deposition that the bullet wounds were not consistent with the theory that Mr. Strnad was running toward Officer Jopek when he was

shot, nor were they consistent with the theory that Officer Jopek was falling to the ground when the shots were fired. (Felo Dep. 38-39, 102-103). It is undisputed that Mr. Strnad did not have a firearm on him the night of the shooting.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

Celotex v. Catrett, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. Tolton v. American Biodyne, Inc., 48 F.3d 937, 941 (6th Cir. 1995) (citing Celotex, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

5

evidence on which the jury could reasonably find for the plaintiff." Copeland v. Machulis, 57 F.3d 476, 479 (6th Cir. 1995) (citing Anderson, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. Anderson, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." Id. at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." Cox v. Kentucky Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. Id.

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

## DISCUSSION

The United State Supreme Court has determined that "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." Graham v. Connor, 490 U.S. 386, 395 (1989). The Fourth Amendment to the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation. and particularly describing the place to be searched, and the person or things to be seized.

The Fourth Amendment is applicable to the states and their subdivisions by the Fourteenth Amendment.

The Supreme Court has consistently held that a police officer's fatal shooting of a fleeing suspect constitutes a "seizure" of the person under the Fourth Amendment. Tennessee v. Garner. 471 U.S. 1 (1985); Brower v. County of Inyo, 489 U.S. 593 (1989). Therefore. we start from an acknowledgment that Mr. Strnad was "seized" when he was shot by Officer Jopek. Seizure, alone, however, does not necessarily violate the Fourth Amendment. In order to generate liability under this provision, a seizure must be unreasonable.

The Supreme Court has further held that deadly force is not necessarily reasonable when used against a fleeing suspected felon if the suspect is unarmed and presents no danger. However, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Smith v. Freland. 954 F.2d 343, 346 (1992); (citing

7

Tennessee v. Garner, 471 U.S. 1, 11 (1985)).

"[W]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Garner, 471 U.S. at 11. Probable cause is an objective standard and is not reliant on the actual intent or belief of the officer, himself. Probable cause exists when there are sufficient facts "to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Painter v. Robertson, 185 F. 3d 557, 569 (6th Cir. 1999).

In determining whether Officer Jopek acted reasonably, we must view the facts and circumstances of this case from the perspective of a reasonable officer on the scene, and not with detachment of a disinterested party privileged with 20/20 hindsight. See, Graham v. Connor, 490 U.S. 386, 396-397 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. The Sixth Circuit has elaborated on this standard noting that "[w]e must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." Smith v. Freland, 954 F. 2d at 347.

If Officer Jopek's version of the events leading up to the shooting were accepted as true, this Court would have no difficulty ruling in his favor on the Motion for Summary Judgment. Under the circumstances described by Officer Jopek no reasonable jury could find that the

8

decision to fire against Mr. Strnad was objectively unreasonable. According to Officer Jopek. Mr. Strnad made repeated motions that looked as if he may be reaching for a weapon; Mr. Strnad charged toward him making threatening statements; and Officer Jopek was in a physically vulnerable position, having hurt his knee leaving him unable to stand or run.

However, under the Summary Judgment standard the Court is bound. instead, to construe the facts in the light most favorable to the non-moving party, in this case, the Plaintiff. Construing the facts in this manner. there is evidence, if believed, to contradict Officer Jopek's version of the moments leading to the shooting. For example, Officer Jopek claims that he fired as he was falling and as Mr. Strnad was coming towards him. However, there is evidence provided by the helicopter pilot and the coroner's office that could be construed to indicate that Mr. Strnad did not come towards the officer, and that the shots were fired at Mr. Strnad's back as he was running away from the officer. There is also evidence that would support Plaintiff's contention that Officer Jopek was not falling when he fired.

Further, there is evidence available under which a jury could find that Officer Jopek's description of the earlier events leading up to the point of the fatal episode was inconsistent. Officer Jopek says that he fired as he fell and as Mr. Strnad was coming towards him. Because Officer Jopek and the deceased are the only two people who know exactly what happened in the moments before the deadly shots were fired, a jury's assessment of Officer Jopek's credibility could be material to the outcome of this case.

There is. therefore. a genuine issue of material fact for the jury to decide in determining whether there was a violation of Mr. Strnad's constitutional rights in this case. However, Defendant Jopek contends, that even if the jury were to find a constitutional violation, he would

still be entitled to qualified immunity with respect to the Plaintiff's § 1983 claims. This argument is unpersuasive. The Sixth Circuit employs a three part test to determine whether qualified immunity is warranted. First, the Court must determine whether "based upon the applicable law, the facts viewed in the light most favorable to the Plaintiff show that a constitutional violation has occurred." Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003). Second, the Court must determine whether "the violation involved a clearly established constitutional right of which a reasonable person would have known." Id. Lastly, the Court must determine whether "the Plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." Id.

If a jury were to find that Officer Jopek shot Mr. Strnad as he was running away, and without an objectively reasonable belief that Mr. Strnad posed an immediate threat of serious harm to himself or others, Officer Jopek could not satisfy the Sixth Circuit's test for qualified immunity. Not only would this establish a constitutional violation, but the right to be free from deadly fire when fleeing (so long as the suspect does not pose an immediate threat of serious harm) is clearly established in the law. The Sixth Circuit has stated

> that it has been clearly established in this circuit for the last twenty years that a criminal suspect "has the right not to be shot unless he is perceived to pose a threat to the pursuing officers or to others during flight." [citation omitted]. This articulation of the *Garner* rule is clearly established even in situations with diverse factual distinctions... factual distinctions between the cases do not alter the certainty about the law itself.

Sample v. Bailey, 403 F.3d 689, 699 (6th Cir. 2005).

The Sixth Circuit applies the same standard for determining statutory immunity on

Plaintiff's state law claims, as for determining qualified immunity. Therefore, if qualified immunity is not established. statutory immunity cannot save Defendant Jopek from the state law claims. Because the Court is required to construe the facts in the light most favorable to the Plaintiff, because there has been sufficient evidence presented under which a jury could possibly find that Officer Jopek's decision to fire at Mr. Strnad was not objectively reasonable under the circumstances, and because there is a clearly established constitutional right not to be shot while fleeing from police so long as the suspect does not pose any immediate threat of serious harm, Summary Judgment in favor of Officer Jopek is not warranted.

## CONCLUSION

For the reasons set forth above. this Court hereby denies Defendant Officer Jopek's Motion for Summary Judgment. (ECF #38). Trial will commence on September 18, 2006, at 8:30 a.m.

IT IS SO ORDERED.

*Donald C. Nugent*
Donald C. Nugent
United States District Judge

Date: *September 14, 2006*

11