IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Nicole C. Tomazic, Administratix ) | Case Number: 1:04 CV 2252 |
| ) | |
| Plaintiff, ) | Judge Donald C. Nugent |
| ) | |
| City of Cleveland, et al., ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Defendants. ) | |

This matter is before the Court on Defendant City of Cleveland's Motion for Summary Judgment. (ECF # 40). Plaintiff has sued on behalf of the decedent, Stanley Strnad, who was killed after he fled from police following a traffic stop. Mr. Strnad died of gunshot wounds inflicted by Officer Daniel Jopek of the City of Cleveland Police Department. Plaintiff brought suit against Officer Jopek, the City of Cleveland, and various city officials, claiming that Officer Jopek, acting under color of law, violated Mr. Strnad's Fourth, Fifth and Sixth, and Eighth Amendment rights by exerting excessive and deadly force. Plaintiff has also asserted causes of action under the Civil Rights Act 1871, 42 U.S.C. § 1983, 28 U.S.C. §1343, and the Ohio common law. Plaintiff claims that the City and its officials are liable for failing to institute appropriate policies and procedures, and for failing to properly train, supervise or discipline its officers with respect to the use of deadly force. Plaintiff further claims that the City ratified the conduct of Officer Jopek, and that the City was negligent for hiring Officer Jopek, and for failing to discipline him for prior incidences. Plaintiff also alleges spoilation of evidence and the intentional or negligent delay in providing medical treatment and transport to the deceased. The City claims that Plaintiff has failed to establish a claim against it under the Civil Rights Act, and

that it is immune from any state law claims. For the reasons set forth below, the Defendant's motion is hereby GRANTED.

## FACTS[1]

It is undisputed that on the evening of November 14, 2003, Defendant Daniel Jopek shot and killed Stanley Strnad while Mr. Strnad was fleeing from the police. Officers Jopek and Rudin pursued Mr. Strnad until he left their jurisdiction. At that point the officers were instructed to cease pursuit. Mr. Strnad continued to flee police driving into the City of Euclid. By this time a police helicopter was also tracking Mr. Strnad's vehicle. Eventually Mr. Strnad crossed back into the City of Cleveland's jurisdiction. At that time Officers Jopek and Rudin were told not to continue their pursuit by Cleveland Police Captain DiPiero because of safety concerns; the officers disregarded this command and resumed their pursuit of Mr. Strand's vehicle.

After Mr. Strnad re-entered the City of Cleveland, and while being pursued by Officers Jopek and Rudin, Mr. Strnad crashed into another car at an intersection. Having disabled his vehicle in the crash, Mr. Strnad then fled on foot. The helicopter continued to track Mr. Strnad illuminating him with the helicopter spotlight as he fled. Mr. Strnad ran down a driveway and into the backyard of a house on 156th Street. At some point between fleeing down the driveway, and being found near a swing set in the backyard, Mr. Strnad was shot four times by Officer

---

[1] Except as otherwise noted, the factual summary is based solely upon the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint, and the deposition transcripts filed with the Court as part of the summary judgment motion briefing. Those facts which are contested and have some support through deposition testimony, affidavit, or other evidence will be addressed in the "Discussion" section below and shall be construed in the light most favorable to the Plaintiff as required under the Summary Judgment standards.

Jopek. The details of what happened between the time Mr. Strnad ran down the driveway and the moment he was shot are in dispute. Plaintiff believes that Mr. Strnad was shot in the back while fleeing from the police. Officer Jopek contends that Mr. Strnad kept reaching into toward his waistband as if he had a weapon, and that he shot Mr. Strnad only after he had become physically incapcitated and Mr. Strnad came towards him in a threatening manner.

Plaintiff alleges that Officer Jopek is a rogue and overly aggressive officer who had been involved in two other incidents involving deadly force in the 15 months leading up to this shooting. In one of the alleged incidents, Officer Jopek's partner shot and killed an unarmed suspect, and Officer Jopek has fired shots at the suspect's vehicle; in the other incident Officer Jopek shot and killed a dog. The first shooting was investigated, though Plaintiff contends the investigation was inadequate, and Officer Jopek was cleared of any wrongdoing. Following the shooting in this case, the City of Cleveland's prosecutor brought charges against Officer Jopek for reckless homicide. The Department's Deadly Force Team was called to investigate the shooting of Mr. Strnad. Plaintiff claims that the investigator on that case relied on the evidence gathered by the Homicide Unit rather than conducting an independent review of the incident. Officer Jopek has not been disciplined by the Police Department for any of the above mentioned incidents.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

Celotex v. Catrett, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. Tolton v. American Biodyne, Inc., 48 F.3d 937, 941 (6th Cir. 1995) (citing Celotex, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Copeland v. Machulis, 57 F.3d 476, 479 (6th Cir. 1995) (citing Anderson, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. Anderson, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." Id. at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce

4

evidence that results in a conflict of material fact to be solved by a jury." Cox v. Kentucky Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. Id.

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

## DISCUSSION

Plaintiff, Nicole Tomazic has sued the City of Cleveland Police Department, former Cleveland Mayor Jane Campbell, former Cleveland Public Safety Directors Sanford Watson and James Draper, former Cleveland Chief of Police Edward Lohn, and Officer Jopek. The individual Defendants (other than Officer Jopek) were sued only in their official capacity. The Sixth Circuit has made clear that claims against city officials made purely in their official capacities are to be considered claims against the City itself. Shamaeizadeh v. Cunigan, 338 F.3d 535, 556 (6th Cir. 2003). In addition, as the City defendants note in their Motion for Summary Judgment, the Police Department is not *sui juris*, and cannot be sued in its own right. Instead, the Police Department is simply a subunit of the City itself. Accordingly, since all of the claims raised against these defendants are properly viewed as claims against the City, the City of

5

Cleveland Police Department, Mayor Campbell, Mr. Watson, Mr. Draper, and Chief Lohn are hereby dismissed from the action with prejudice, and all claims will be treated as if they had been properly raised against the City of Cleveland.

The Plaintiff brought claims against the City for violations of the United States Constitution, and the federal Civil Rights statute, 42 U.S.C. § 1983 (First Cause of Action), and several state law claims including assault and battery (Second Cause of Action), wrongful death (Third Cause of Action), negligence and intentional infliction of emotional distress (Fourth Cause of Action), negligent or intentional delay in providing medical treatment and transport (Fifthe Cause of Action), spoilation of evidence (Sixth Cause of Action), and negligent hiring (Seventh Cause of Action). All of these claims stem from Plaintiff's claim that Officer Jopek exerted excessive force over the deceased Mr. Strnad.

A. <u>State Law Claims</u> (Counts Two through Seven).

Pursuant to Ohio's Political Subdivision Tort Liability Act, codified at O.R.C. Chapter 2744, political subdivision are immune from liability for the intentional torts committed by its employees, or for any actions of its employees that may injure or cause death when the action is taken in connection with a governmental or proprietary function. O.R.C. § 2744.03(A); O.R.C. § 2744.02(A)(1); <u>Lucijanic v. City of Columbus, Div. of Police</u>, 2006 WL 1000225, at *13 (S.D. Ohio, April 13, 2006)(citing <u>Ramey v. Mudd</u>, 154 Ohio App. 3d 582, 587-588, 798 N.E.2d 57, 61-62 (2003)). This immunity applies equally to negligent or reckless acts unless specific exceptions under O.R.C. § 2744.02(B) or O.R.C. § 2744.03(A)(6) apply. The only exception argued by the Plaintiff is the exception that dissolves immunity if the employee's acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner.

See O.R.C. § 2744.03(A)(6)(b). The Plaintiff, however, has failed to point to any admissible evidence that would indicate that any of the governmental actors in this case acted in bad faith, or were wanton or reckless in their actions.

Plaintiff also argues that her state law claims should prevail because Ohio's municipal immunity statute violates the Ohio Constitution. Ms. Tomazic cites Kammeyer v. City of Sharonville, 311 F.Supp.2d 653 (S.D. Ohio 2003), and Estate of Owensby v. City of Cincinnati, 385 F.Supp.2d 619 (S.D. Ohio 2004) in support of this proposition. This issue, however, has been very recently addressed by the Sixth Circuit, and the Constitutionality of O.R.C. Chapter 2744 has been upheld. Ellis v. Cleveland Municipal School District, 455 F.3d 690, 697 (6th Cir. 2006). The Ellis court held that

> the Liability Act, Ohio Rev.Code §§ 2744.02 , 2744.03, does not violate article I, sections 5 and 16, of the Ohio constitution because the Supreme Court of Ohio has never held the statute unconstitutional and because Ohio's intermediate courts are unanimous in upholding the statute. . . .No majority decision of the Supreme Court of Ohio has ever held the Liability Act unconstitutional. On the contrary, the law of the supreme court remains that the statute is constitutional. In Fabrey v. McDonald Village Police Department, the supreme court held that the Liability Act does not violate the equal protection; due process; or article 1, section 16, right to remedy provisions of the Ohio constitution. 70 Ohio St.3d 351, 639 N.E.2d 31, 33-35 (Ohio 1994).

Id. Therefore, the immunity statute is valid, and it precludes Plaintiff from pursuing her state law claims against the City in this case.

B. Federal Claims (Count One)

Plaintiff's federal claims arise under 42 U.S.C. § 1983, and are based on the theories that: (1) the City ratified Officer Jopek's actions and are therefore liable for them; (2) the City failed to properly supervise, control or train its officers on the use of deadly force; and, (3)

7

the City failed to adequately investigate and punish Officer Jopek following the shooting. None of these theories supports a finding that the City of Cleveland violated 42 U.S.C. § 1983 in this case. The Sixth Circuit recently reiterated that in order to hold a municipality liable for a §1983 claim, the plaintiff must show (1) the existence of a clear, persistent pattern of constitutional violations, (2) notice, or constructive notice, on the part of the defendant, (3) the defendant's tacit approval of the unconstitutional conduct, such that the deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) the defendant's policy was the "moving force" or direct causal link to the unconstitutional activity. Thomas v. City of Chattanooga, 398 F.3d 426 (6th Cir. 2005). The plaintiff has presented speculative and conclusory statements in attempt to persuade this Court that these elements have been met, but she has failed to present any actual admissible evidence in support of those allegations.[2]

1. Ratification.

The ratification argument fails to meet the requirements for municipal liability that were established in the Supreme Court case, Monell v. New York City Dep't of Social Service, 436 U.S. 658 (1978). In Monell, the Court stated that supervisory personnel cannot be liable under section 1983 on a respondeat superior basis. Liability of supervisory personnel must be based on

---

[2] Plaintiff attempts to establish that Officer Jopek had a reputation for being overly aggressive officer by submitting the statement of a private investigator, Mark Angelotta which reference statements supposedly made during a conversation by two other officers. This testimony, however, is hearsay and may not be considered on a Motion for Summary Judgment. Further, the conversation never mentions Officer Jopek by name, and there is no indication that even if these officers believed Officer Jopek to be overly aggressive that this was a common perception within the Department or was that this alleged reputation was known by Officer Jopek's superiors or any decision makers in the Department or in the City.

more than simply the right to control employees. Therefore, the City cannot be held liable simply because one of its employees may have exercised excessive force in a particular situation. The City can be liable for Mr. Strnad's death only if his death was caused by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694. Such a policy or custom must be "so permanent and well settled" as to have "the force of law." Id. at fn. 10. Ratification of a single misdeed, by failing to discipline the offender, even if it occurred, does not equate to a governmental policy or custom that represents official policy and is so permanent and well settled and to have the force of law. Further, according the facts as presented by the Plaintiff herself, the City did not ratify Officer Jopek's actions. According to Plaintiff, the City of Cleveland filed criminal charges against Officer Jopek based on the shooting at issue in this case. This can hardly be considered ratification of his actions.

Further, in order to find liability under 42 U.S.C. §1983, the City's acts or omissions must be shown to have been a direct cause or "moving force" behind the use of the alleged excessive force. Id. at 695; Polk County v. Dodson, 454 U.S. 312, 326 (1981). There is no such showing in this case. Ratification of Officer Jopek's acts after the fact, even if it had happened, could not have been a direct cause of the shooting when it occurred. Absent some showing that the City had a past history of ratifying the use of deadly force in situations similar to that which occurred in this case, and that Officer Jopek relied on this policy when making his decision to shoot Mr. Strnad, there cannot be the necessary causal link to establish the City's liability.

Plaintiff does argue that the City had previously ratified other instances of Officer Jopek's use of excessive force, and his history of drawing his weapon on unarmed suspects. One of the

incidents cited by the Plaintiff, however, occurred while Officer Jopek was employed by the Olmsted Township Police Department. The City of Cleveland cannot be held to have ratified conduct that occured before they even hired Officer Jopek. The other incident cited by Plaintiffs involved a shooting in which Officer Jopek's partner shot and killed an unarmed suspect. Officer Jopek fired shots at the deceased's vehicle in that incident, but did not strike the suspect. Plaintiff, however, has provided no evidence that would show that Officer Jopek's actions in that incident were inappropriate.[3] Any such conclusion would be nothing more than sheer speculation and cannot support their claim that the City somehow ratified the use of excessive force by Officer Jopek in the past. As the Plaintiff has failed to provide any admissible evidence or support other than its own assertions and speculations that the City of Cleveland ratified any prior use of excessive force by Officer Jopek or others, or that Officer Jopek relied on such ratification when he shot Mr. Strnad, she has failed to establish any link of causation between the any alleged acts of ratification and the alleged violation of Mr. Strnad's rights.[4] Thus, the Plaintiff has failed to establish any possibility of liability against the City under this theory.

2. <u>Failure to Supervise, Control or Train</u>.

Plaintiff also claims that the City failed to properly supervise, control or train Officer Jopek. Claims of this sort are not actionable absent a showing that a city official either

---

[3] In fact, the Magistrate in that case recommended summary judgment in favor of Officer Jopek on claims brought against him by the decedent's representative in that case.

[4] Plaintiff does also cite to an expert report proffered by Mr. George Kirkham. This report, however, was served out of time, and has been stricken from the record. Pursuant to Fed. R. Civ. P. 26(a)(2)(C), expert reports were due in this case on June 20, 2006. The Plaintiff did not disclose Mr. Kirkham's report until August 7, 2006.

encouraged the specific incident of misconduct or in some other way directly participated in it." Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir.), cert. denied, 459 U.S. 833 (1982). Plaintiff has presented absolutely no evidence in this case to indicate that a city official encouraged or otherwise participated in the alleged misconduct of Officer Jopek. In fact, the Plaintiff admits that Officers Jopek and Rudin were specifically told by their Commanding Officer to cease pursuit of Mr. Strnad long before the deadly encounter arose. Further, the City has presented testimony showing that Officer Jopek received training at the Cleveland Police Academy specifically directed at how to handle foot pursuits in low or no light situations. Officer Jopek was also trained on Cleveland's Use of Force Policy, including training on "shoot don't shoot" situations. The City further offered the Affidavit of Lieutenant Terence McHugh, the current Lieutenant-In-Charge of the City of Cleveland Police Academy. Lieutenant McHugh testified that he reviewed Officer Jopek's training records and was able to determine that Officer Jopek 's academy training exceeded the requirements of the State of Ohio's Peace Officer's Training Certification Program, and that Officer Jopek has received annual training on the use of deadly force and on the City's policies with regard to the use of deadly force. Plaintiff has offered no admissible evidence to show that either the City's training or overall policy on the use of force was inadequate. [5]

---

[5]

Plaintiff relies on the expert report of Dr. George Kirkham to support her proposition that the City's training and use of force polices were inadequate to protect the rights of Cleveland's citizens. As indicated in footnote 4, supra, that report has been stricken from the record and is inadmissible. Even had the report been timely filed, Mr. Kirkham's opinion may not have been admissible as a response to the Summary Judgment motion because his opinion was based on facts not properly before the court. Many of the cited sources Mr. Kirkham reviewed and considered were based on hearsay or other documentation not properly authenticated or otherwise admissible.

Even if the training procedures in place at the time Officer Jopek was trained were deemed to be inadequate, in order to prevail on a claim of improper training the plaintiff must also establish that the inadequacy was the result of the City's deliberate indifference, and that it was closely related to or actually caused the injury complained of. Ciminillo v. Streicher, 434 F.3d 461, 469 (6th Cir. 2006); Blair v. City of Cleveland, 148 F.Supp. 2d 894, 913-915 (N.D. Ohio 2000). Nothing in the factual materials Mr. Kirkham claims to have relied on would support a finding that the City was indifferent to inadequacies in its training procedures. Further, if, Officer Jopek was the overly aggressive, rogue officer that the Plaintiff has tried to make him out to be, there is no indication that any degree of training would have made any difference in the way the events unfolded the night Mr. Strnad was killed. Thus, the Plaintiff has provided no factual support for a finding that any alleged inadequacies in the City's training procedures was closely related to or actually caused Mr. Strnad's injuries.

Finally, even if Plaintiff could establish that Officer Jopek was not properly trained, or not properly re-trained following instances where he had used or attempted to use deadly force, this would not suffice to meet the Plaintiff's burden. It is well settled that a plaintiff must do more than prove that a single officer was improperly trained or out of control, even if the City had been aware of past complaints against that particular officer. City of Canton v. Harris, 489 U.S. 378, 389 (1989); Mettler v. Whitelodge, 165 F.3d 1197, 1205 (8th Cir. 1999); Thomas v. City of Chattanooga, 398 F.3d 426, 430-431 (6th Cir. 2005). Rather, plaintiff is required to show a clear and persistent pattern of improper training or lack of supervision. There is no evidence to support such a showing.

3. Failure to Investigate

Plaintiff contends that the City did not properly investigate or discipline Officer Jopek for Mr. Strnad's shooting, and that this constitutes a violation of 42 U.S.C. §1983. At the same time, she states that the investigator assigned to review this case relied on information gathered by the Department's homicide division, that he signed a criminal complaint for reckless homicide against Officer Jopek, and that the prosecutor brought charges against Officer Jopek. (Larry Dep. 4-9, 27-53, 63). It is difficult to imagine how much more seriously the Department could take the shooting than to file criminal charges against the Officer who shot Mr. Strnad.

Further, Plaintiff has failed to provide any evidence that the City's failure to investigate this, or any prior incident where Officer Jopek was accused of exercising excessive force was the "moving force" behind the shooting of Mr. Strnad. See Searcy v. City of Dayton, 38 F.3d 282, 287 (6th Cir. 1994). A failure to investigate a shooting, cannot logically or legally be the cause or "moving force" behind the shooting, itself. Therefore, even if the investigation of the shooting was not properly performed, that failure could not have been the cause of Mr. Strnad's death, and the City, therefore, cannot be held liable. Monell v. New York City Dep't of Social Service, 436 U.S. at 695; Polk County v. Dodson, 454 U.S. 312, 326 (1981).

Finally, Plaintiff makes no argument that the failure to investigate incidents involving the use of deadly force was a custom or policy that was so pervasive within the City of Cleveland that it took on the force of law. As stated above, a failure to investigate a single incident does not rise to the level of a Monell violation. Under Monell, the City can be liable for Mr. Strnad's death only if his death was caused by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694. Such a policy or custom must be "so permanent and well settled" as to have

13

"the force of law." Id. at fn. 10. Ratification of a single misdeed, by failing to investigate or discipline the offender, even if it occurred, does not equate to a governmental policy or custom that represents official policy and is so permanent and well settled and to have the force of law.

## CONCLUSION

For all of the reasons set forth above, Plaintiff has failed to provide evidence sufficient to support her claim that, if Officer Jopek is found to have violated Mr. Strnad's constitutional rights by exerting excessive force, the City of Cleveland is liable for a violation of 42 U.S.C. §1983. Therefore, the City's Motion for Summary Judgment (ECF #40) is hereby GRANTED. IT IS SO ORDERED.

*Donald C. Nugent*
Donald C. Nugent
United States District Court

Date: *September 14, 2006*